**MAYER BROWN LLP**
Douglas Spelfogel
Leah Eisenberg
Dabin Chung
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 262-2500
Email: dspelfogel@mayerbrown.com
        leisenberg@mayerbrown.com
        dchung@mayerbrown.com

**BACKENROTH FRANKEL &
KRINSKY, LLP**
Mark Frankel
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544
Email: mfrankel@bfklaw.com

*Co-Counsels to the Plaintiff*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>96 Wythe Acquisition LLC,<br><br>        Debtor. | Chapter 11<br>Case No. 21-22108 (RDD) |
| 96 Wythe Acquisition LLC,<br><br>        Plaintiff,<br><br>    -against-<br><br>Jacques Jiha, Ph.D., in his capacity as the Commissioner of Finance of the City of New York,<br><br>        Defendant. | Adv. Pro. No 22-_____<br><br><br><br>**ADVERSARY COMPLAINT** |

96 Wythe Acquisition LLC, the above-captioned debtor and debtor-in-possession (the "Debtor" or the "Plaintiff"), by and through its undersigned counsel, Mayer Brown LLP and Backenroth, Frankel & Krinsky, LLP, as and for its Complaint against Jacques Jiha, Ph.D, in his capacity as the Commissioner of the Department of Finance of the City of New York (the "DOF" or "Defendant"), hereby alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action against Defendant pursuant to Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") 7001(1), (2) and (9) and sections 541 and 542 of Title 11 of the United States Code (the "Bankruptcy Code") in order to resolve a dispute as to the Debtor's estate's entitlement to, and resulting ownership in, certain tax abatements stemming from the construction of a building (the "Project"), the Williamsburg Hotel (the "Hotel"), located at 96 Wythe Avenue, Brooklyn, New York (the "Property").

2.      Specifically, Plaintiff is seeking a declaration and order that its application for tax abatements under New York's Industrial and Commercial Abatement Program (the "ICAP") was timely, but improperly denied by Defendant, and Plaintiff is therefore entitled to the benefit of substantial tax abatements, which constitute property of the Plaintiff's bankruptcy estate and are subject to turnover by Defendant.

3.      New York City developed the ICAP, which provides certain abatements for property taxes for periods of up to 25 years for owners who plan to build, modernize, expand or otherwise physically improve industrial or commercial buildings in certain neighborhoods throughout the five boroughs.  NYC Admin Code § 11-268, *et seq.*  The Property is located in an area eligible for tax abatements under the ICAP and the Plaintiff undertook the Project with the expectation of receiving ICAP benefits, which it anticipates would result in a reduction of real estate taxes aggregating over $32 million over the ICAP benefit period.

4.      Pursuant to the ICAP statute, the Plaintiff was required to submit a final application for benefits "no later than one year from the date of issuance of the first building permit for construction work" related to the Project.  NYC Admin. Code § 11-270(e)(1)(b).

5.      On July 24, 2014, Plaintiff filed a final application for an abatement of taxes under the ICAP, but Defendant denied the final application as untimely – and denied all ICAP benefits as a result – because such application was not filed within a year of the original permits issued for the Project in May 2013.

6.      However, the original permits relied on by Defendant in denying the final application were revoked after the New York City Department of Buildings (the "DOB") issued a stop work order for the Project following objections raised by an adjacent property owner related to Plaintiff's original construction plans.  As a result of that stop work order and dispute with the adjacent property owner, Plaintiff was forced to redesign significant portions of the Hotel and formulate brand new plans for construction.  Those new plans were subsequently approved by the DOB who then issued new permits for construction, which rendered the original permits on which Defendant relied, non-existent.  In denying Plaintiff's final application, Defendant failed to address the fact that the original permits were revoked and new permits were issued with respect to the Project, thereby extending the time within which Plaintiff had to file its final application under the ICAP statute.

7.      Indeed, the DOF's denial is entirely inconsistent with its own ICAP rules that were proposed after the DOF denial of Plaintiff's final application and that became effective in March 2017.  Specifically, the ICAP rules confirm that under the circumstances here – where substantial changes to the Project resulted in the issuance of new, subsequent building permits – the Project

3

would be considered a new project for ICAP purposes, and the time to file a final application would be extended based on the date of the new permits.

8.     Here, there is no question that Plaintiff's final application was filed within a year of the new permits issued for the Project pursuant to the new plans for construction approved by the DOB.

9.     As a result of Defendant's improper denial, the Plaintiff has lost the benefit of the tax abatements under the ICAP worth more than $32 million.  Not only is such loss devastating to the economics of the Project – which was premised, in part, on receipt of the ICAP tax benefits – but also to the Debtor, its operations, the Chapter 11 Case and all of the Debtor's creditors, where the anticipated tax abatements improperly withheld by Defendant constitute one of the estate's largest assets.

10.    For all of these reasons, and as described in more detail below, Plaintiff seeks the Court's declaration and order confirming its entitlement to the tax abatements under the ICAP and related ICAP rules and requiring turnover of such funds by Defendant for the benefit of the Plaintiff, its estate and all of its creditors.

## **THE PARTIES**

11.    Plaintiff is a New York limited liability company with its principal place of business at 96 Wythe Avenue, Brooklyn, New York, 11249.

12.    The Plaintiff owns and operates the Hotel, a historically successful hotel located at 96 Wythe Avenue, Brooklyn, New York, which is now fully operational after its business was severely curtailed during the initial stages of the COVID-19 pandemic and as a result of ongoing disputes with its secured lender, among other things.

13.    On February 23, 2021 (the "Petition Date"), the Plaintiff filed a voluntary petition under Chapter 11 of the Bankruptcy Code initiating the above-captioned Chapter 11 Case (the

"Chapter 11 Case").  The Plaintiff continues to operate its business and manage its property as debtor-in-possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.  No official committee of unsecured creditors or trustee has been appointed in this Chapter 11 Case.

14.     Defendant is Jacques Jiha in his capacity as the Commissioner of the DOF.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334 and Bankruptcy Rule 7001 because the Plaintiff is debtor in the Chapter 11 Case pending in the United States Bankruptcy Court for the Southern District of New York.

16.     The legal predicates for the claims asserted herein are Bankruptcy Code §§ 541 and 542, Bankruptcy Rules 7001(1) and (9) and New York common law.

17.     This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1), (b)(2)(A), (b)(2)(B), and (b)(2)(O).

18.     This Court has the statutory and constitutional authority to enter a final judgment with respect to all claims asserted in this Complaint.

19.     Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## FACTUAL BACKGROUND

### A.     The Plaintiff Purchases the Property and Submits Plans for Construction of the Hotel

20.     In or about June 2012, Plaintiff purchased the Property located at 96 Wythe Avenue in  Williamsburg, Brooklyn with the intention of constructing the Hotel – an eight-story, 150 guest room hotel – thereby revitalizing the community where the Property is located.  At the time of purchase, the Property was improved by a warehouse building.  In September 2012, Plaintiff secured a demolition permit to demolish the warehouse and allow for the new construction Project.

21.     On or about October 1, 2012, Plaintiff filed new building construction plans with the DOB that were approved on April 23, 2013 (the "April 2013 Approved Plans").  The April

2013 Approved Plans included "support of excavation" plans, which required "underpinning" – located on a neighboring parcel – to support the Project's foundation.  Accordingly, the DOB's approval of the April 2013 Approved Plans was conditioned upon the completion of underpinning on the adjoining property to the east, located at 5462 North 11th Street (the "Adjacent Property").

**B.**     **The Project Is Premised on the Expectation of Receiving Tax Benefits Under the ICAP**

22.     As described above, the ICAP provides certain abatements for property taxes for periods of up to 25 years for owners who plan to build, modernize, expand or otherwise physically improve industrial or commercial buildings in certain neighborhoods throughout the five boroughs.  NYC Admin Code § 11-268, *et seq.*  The Property is located in an area eligible for tax abatements under the ICAP.

23.     Additionally, one of the stated purposes of the ICAP is to assist minority and women-owned real estate developers.  *See* NYC Admin Code § 11-278.  Thus, the ICAP has enabled a class of developers that have historically had trouble breaking into the capital-intensive world of New York City real estate development – minorities and women – to make their mark by taking advantage of the ICAP tax benefits.  The Plaintiff, whose principal is a woman, is one such business.

24.     Pursuant to the ICAP statute, to be eligible for ICAP benefits, an applicant must, *inter alia,* file a preliminary application (the "Preliminary Application") for such benefits.  NYC Admin Code § 11-270(e)(1)(a)(i) states as follows:

> No benefits pursuant to this part shall be granted for any construction work unless the applicant filed a preliminary application for such benefits on or before the date of issuance of the first building permit for such work.

25.     The ICAP statute also requires that an applicant file a final ICAP application (the "Final Application").  NYC Admin Code § 11-270(e)(1)(b) states as follows:

> Applicants shall file a final application for benefits no later than one
> year from the date of issuance of the first building permit for
> construction work, or, where construction work does not require a
> building permit, no later than one year from the date of
> commencement of construction.

26.     On April 25, 2013, immediately following the DOB's approval of the April 2013

Approved Plans, Plaintiff timely filed a Preliminary Application for an abatement of taxes under

the ICAP, which Defendant acknowledged having received on April 29, 2013.  There is no dispute

that Plaintiff's filing of the preliminary application was timely.

27.     Accordingly, Plaintiff moved forward with the Project based on the expectation of

receiving ICAP benefits, which Plaintiff anticipates would result in a reduction of real estate taxes

aggregating over $32 million over the ICAP benefit period (the "Tax Abatement").

**C.     The DOB Issues Original Building Permits Based on the April 2013 Approved Plans**

28.     On May 30, 2013, based on the April 2013 Approved Plans, the DOB

approved several building permits for the Project (the "Original Permits").

29.     Although the Original Permits included foundation and new building permits,

no work pursuant to those permits could commence until all of the excavation and support

of excavation work – including the completion of the underpinning of the Property's

foundation along the border with the Adjacent Property – was completed.

30.     In the summer of 2013, Plaintiff began the excavation and underpinning work

on the Adjacent Property according to the April 2013 Approved Plans.

**D.     The DOB Issues a Stop Work Order Revoking the April 2013 Approved Plans and
        Original Permits**

31.     In or around September 2013, the owner of the Adjacent Property lodged

complaints with the DOB, claiming that Plaintiff's underpinning work was causing cracks in

its building, which was itself under construction.  As a result of this dispute with the owner

of the Adjacent Property, on September 4, 2013, the DOB issued two violations to Plaintiff and on September 5, 2013, issued a full stop work order (the "Stop Work Order").

32.     Pursuant to DOB rules, a full stop work order stops all work on a construction site or building, excluding any necessary remedial work to make the site safe.[1]  The Stop Work Order remained in effect through the balance of 2013 before it was eventually rescinded by the DOB on January 24, 2014.

33.     Following the Stop Work Order, Plaintiff filed new excavation and support of excavation plans with the DOB and, on October 11, 2013, the DOB issued an Alteration Type 3 permit that allowed Plaintiff to perform emergency support of excavation work.

34.     However, following several meetings between Plaintiff and the Project's engineers and representatives of the Adjacent Property owner regarding alleged structural damage to its building arising from Plaintiff's excavation work, the Adjacent Property owner purported to withdraw its prior consent to allow Plaintiff to utilize underpinning along its property line.

35.     Separately, on November 29, 2013, the DOB issued a plumbing and mechanical permit to Plaintiff (the "November 29, 2013 Plumbing Permit").  Even though the DOB issued the November 29, 2013 Plumbing Permit, Plaintiff was unable to proceed with any construction because the excavation work per the April 2013 Approved Plans, which had to occur first, was still not complete due to the Adjacent Property owner's objections to the underpinning work on its property and the DOB's associated Stop Work Order.

36.     On February 6, 2014, the DOB issued a letter regarding its "Intent to Revoke Approval(s) and Permit(s), Order(s) to Stop Work Immediately" (the "Notice of Intent to Revoke"), which stated:

---

[1] *See* https://www1.nyc.gov/site/building/safety/swo.page

> The [DOB] intends to revoke the approval and permit issued in connection with the [Project] application referenced above … within fifteen calendar days of the posting of this letter by mail unless sufficient information is presented to the [DOB] to demonstrate that the approval and permit should not be.
>
> The [DOB] intends to revoke the approval and permit for the reasons set forth on the attached Objection Sheet, dated January 30, 2014.
>
> In order to prevent revocation of the approval and permit upon the expiration of the fifteen day notice period, your appointment with NEIL ADLER, PE., LEED AP is scheduled for February 21, 2014 ... to present information to the [DOB] demonstrating that the permit should not be revoked.  Your response may be deemed unresponsive if the architect or engineer of record fails to attend the appointment.

*See* Notice of Intent to Revoke attached hereto as **Exhibit 1**.

37.    Following the Notice of Intent to Revoke, Plaintiff could no longer utilize the April 2013 Approved Plans as to the support of excavation and foundation work since those plans required underpinning work on the Adjacent Property and its owner refused to allow such underpinning work.  In other words, the issues raised in the Notice of Intent to Revoke could not be cured and as a result, the Original Permits were revoked and Plaintiff was required to file new support of excavation and foundation plans.

**E.    The DOB Approves New Construction Plans for the Project and Issues New, Replacement Permits to Implement the New Plans**

38.    On February 21, 2014, the DOB approved Plaintiff's new support of excavation and foundation plans, which were based upon a completely different foundation and support of excavation design (the "February 2014 Approved Plans").

39.    The February 2014 Approved Plans required all excavation, foundation and structural work on the Project to occur wholly within the boundaries of Plaintiff's Property, utilizing a tangent piling system consisting of vertical soldier piles, rather than lateral underpinnings located on the Adjacent Property as set forth in the April 2013 Approved Plans.

Thus, under the new February 2014 Approved Plans, the underpinnings installed on the Adjacent Property were abandoned. Additionally, the Property's foundation wall was moved three feet farther away from the Adjacent Property, resulting in a reduction of the footprint for the Plaintiff's Hotel building.

40.     The reduction in Plaintiff's building-footprint required a comprehensive programmatic redesign of the Hotel floor plans, with changes made to the layouts of the ballroom, restaurant and lobby and the addition of an entire floor to the Hotel.

41.     As a result of the Notice of Intent to Revoke and the new February 2014 Approved Plans that approved a different building, the Original Permits issued on May 30, 2013 based on the former project design as set forth in the April 2013 Approved Plans, were revoked. New permits related to the February 2014 Approved Plans were issued by the DOB in July 2014.

42.     Accordingly, the first building permit issued in accordance with the February 2014 Approved Plans was either the November 29, 2013 Plumbing Permit or the new building permits issued in July 2014.

**F.     The DOF Improperly Rejects Plaintiff's Timely Filed Final ICAP Application**

43.     On July 24, 2014, Plaintiff filed with the DOF a Final Application for an abatement of taxes under the ICAP. Such Final Application was filed well within a year of the November 29, 2013 Plumbing Permit *and* the new permits issued in July 2014 pursuant to the February 2014 Approved Plans.

44.     Notwithstanding, on August 25, 2014, the DOF determined that Plaintiff was ineligible for ICAP benefits, based solely on the following:

- Final Application was filed more than one year after the issuance of the initial building permit.

*See* DOF's denial of ICAP benefits (the "DOF Denial") attached hereto as **Exhibit 2**.

45.     The DOF Denial resulted in the loss of the entirety of over $32 million in tax abatements Plaintiff expected to receive under the ICAP over the ICAP benefit period.

**G.     Plaintiff Files a Petition Challenging the DOF Denial**

46.     On December 18, 2014, Plaintiff filed a petition (the "Petition") in the New York Supreme Court, Kings County (Index No. 17750/2014), under CPLR Article 78, challenging the DOF Denial as, among other things, arbitrary and capricious and otherwise unconstitutional.  In particular, the DOF Denial was arbitrary and capricious because it disregarded key facts; namely, it ignored the fact that following the Stop Work Order and Notice of Intent to Revoke, Plaintiff was forced to file and obtain approval of entirely new plans, which were separately approved by the DOB.  These new February 2014 Approved Plans required new permits that were issued by the DOB in July 2014, revoking the earlier, Original Permits issued in connection with the April 2013 Approved Plans.

47.     By its order dated January 27, 2016, the New York Supreme Court denied Plaintiff's Petition and granted Defendant's motion pursuant to CPLR 3211(a) to dismiss the proceeding (the "Trial Court Order").

48.     On March 9, 2016, Plaintiff filed its notice of appeal of the Trial Court Order to the Second Department Appellate Division (No. 2016-03665, the "Appeal") arguing, among other things, that the trial court erred by disregarding the revocation and replacement of the Project's Original Permits.

49.     By its order dated October 24, 2018, the Appellate Division affirmed the Trial Court Order (the "Appellate Order"), incorrectly holding that "[t]he first or earliest building permits for construction work were issued to the [Plaintiff] on May 30, 2013" causing the final application filed on July 24, 2014 to be untimely.

**H.**   **The DOF Promulgates New Rules Governing the ICAP Statute that Are Determinative as to the Timeliness of Plaintiff's Final Application**

50.    Following the Trial Court Order, the DOF promulgated proposed rules governing the ICAP that were published for notice of hearing and comment on August 29, 2016 and certified on August 22, 2016.  *See* Rules of City of NY Dept. of Finance, Title 19, Chapter 36 (the "ICAP Rules").  The ICAP Rules became effective in March 2017.

51.    The ICAP Rules provide that "[a] subsequent building permit will be deemed to be the first building permit for a building where the project for which a preliminary application is made is a new project pursuant to 19 RCNY § 36-05(a)…"  *See* ICAP Rules § 36-04(b).  Under § 36-05(a), a project will be deemed a new project if "a building permit was previously issued for the project and an applicant has shown that there is a change in the project for which a new building permit is issued which meets at least one of the following criteria: (i) change in total estimated cost of the project of at least 10 percent as certified by the applicant; or (ii) change in the total floor area of the project of at least 10 percent; or (iii) change in use.  *Id.* § 36-05(a).

52.    Here, the revised square footage of the Hotel, including the additional floor, added approximately 10% to the total square footage of the building and required the new permits issued by the DOB pursuant to the February 2014 Approved Plans.  As such, as confirmed by the ICAP Rules, the revised Project is a "new project" and the subsequent permits issued for the new Project constitute the "first building permit" for the Project and the time to file the Final Application was one year from the date of those new permits – either the November 29, 2013 Plumbing Permit or the new permits issued in July 2014.  In either case, Plaintiff's Final Application was timely filed within a year of those new permits.

53.    Accordingly, the ICAP Rules, promulgated to govern the ICAP statute and program, interpret the ICAP statute in precisely the same way the Plaintiff did – *i.e.*, where the

redesign of a building results in new permits, the timeframe for the filing of the Final Application for ICAP benefits is to run from the issuance of the new permits for construction, not the old, revoked permits. Indeed, the new ICAP Rules are entirely consistent with the rules that governed ICAP's predecessor statute, which similarly confirmed that a "prior building permit will not be deemed the first building permit for a building if the project for which application is made is a new project that is essentially different from the project for which the prior permit was issued." *See* Rules of the City of NY Dept. of Finance (19 RCNY) § 14-03(d).

54.    On September 19, 2016, Plaintiff filed a motion in the Appeal seeking to supplement the record on Appeal to include the proposed ICAP Rules and requesting that the Appellate Division take judicial notice of the proposed ICAP Rules. Defendant opposed that motion arguing, among other things, that the proposed ICAP Rules did not exist at the time of the DOF Denial and Trial Court Order. On November 2, 2016, the Appellate Division denied the motion and accordingly, declined to take judicial notice of the proposed ICAP Rules or make them a part of the record in the Appeal.

55.    However, failing to properly consider the ICAP Rules not only ignores the legislative intent promulgated therein, but leads to an absurd result and injustice to Plaintiff, counter to the manifest purpose of the ICAP statute. In particular, if the Project is not treated as a new project resulting in a new "first building permit" – as provided for under the ICAP Rules – then, presumably, similarly situated hotel building projects initiated after enactment of the ICAP Rules in 2017 will be treated differently than the Plaintiff's Hotel Project initiated prior to 2017. In other words, the pertinent sections of the ICAP statute – *which have not changed* – would be interpreted differently before and after enactment of the ICAP Rules. Such inconsistent treatment under the *same* statute is an absurd result that is highly inequitable and should not stand.

I.     **Plaintiff Files the Chapter 11 Case to Reorganize Its Business and Defendant Asserts Numerous Claims Against the Estate**

56.     On the Petition Date, the Plaintiff filed the Chapter 11 Case, due to, among other things, severe business disruptions during the initial stages of the COVID-19 pandemic and ongoing disputes with its prepetition secured lender.

57.     Since the Petition Date, the Plaintiff has continued to operate its business and manage the Hotel as debtor-in-possession.  Indeed, the Hotel is now fully operational and thriving despite prior setbacks and Plaintiff has filed its Chapter 11 Plan of Reorganization [Dkt. No. 196] with a confirmation hearing scheduled on June 3, 2022.

58.     Defendant has participated in the Chapter 11 Case, filing numerous proofs of claim against the estate asserting alleged amounts due for (i) real estate property taxes; (ii) estimated unincorporated business and partnership income taxes; and (iii) hotel occupancy taxes.  While the Plaintiff contested such claims, the Plaintiff has negotiated, and continues to negotiate with Defendant in an effort to reconcile the alleged claims.

59.     In any case, as described herein, the Plaintiff holds a significant claim against Defendant for the entirety of the Tax Abatement that would eliminate, or significantly reduce, any taxes owed by the Plaintiff.

### CLAIMS FOR RELIEF

### First Cause of Action

### (Declaratory Judgment pursuant to 28 U.S.C. § 2201 and Federal Rules of Bankruptcy Procedure 7001(2) and (9) that Plaintiff is entitled to the Tax Abatement, which is property of the Debtor's estate pursuant to Bankruptcy Code Section 541)

60.     The Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 59 above as if fully set forth herein.

61.     Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 to determine the relative rights of, and resolve an actual and existing controversy between, Plaintiff and Defendant related to Plaintiff's Final Application under the ICAP statute for certain tax abatement benefits and Plaintiff's entitlement thereto.

62.     Pursuant to the ICAP statute, the Plaintiff was required to submit a Final Application for benefits "no later than one year from the date of issuance of the first building permit for construction work" related to the Project.  NYC Admin. Code § 11-270(e)(1)(b).

63.     As a result of the Stop Work Order and the DOB's Notice of Intent to Revoke, the April 2013 Approved Plans and related permits were revoked and the DOB subsequently approved the new February 2014 Approved Plans and issued new permits related to those Plans.

64.     On July 24, 2014, Plaintiff filed a Final Application for an abatement of taxes under the ICAP, well within a year of the new permits issued pursuant to the February 2014 Approved Plans.  Notwithstanding, Defendant issued the DOF Denial, asserting that Plaintiff's Final Application was untimely and denying any tax abatements related to the Project under the ICAP.

65.     However, the DOF Denial failed to address the fact that the "initial permit" it relied on in May 2013 was revoked following the Stop Work Order, the Notice of Intent to Revoke and approval of the new February 2014 Approved Plans, and new permits were issued.

66.     Indeed, the DOF Denial is entirely inconsistent with the DOF's own ICAP Rules (and the similar rules governing the ICAP's predecessor statute).  Specifically, the ICAP Rules confirm that under the circumstances here – where changes to the Project resulted in the issuance of new building permits – the Project is to be considered a new project for ICAP purposes, and the time to file a Final Application is extended based on the date of the new permits.

67.     As a direct and proximate result of Defendant's improper denial, the Plaintiff has lost the benefit of the Tax Abatement under the ICAP worth more than $32 million.

68.     As a result of the foregoing, an actual and justiciable controversy exists between the Plaintiff and Defendant regarding Plaintiff's Final Application under the ICAP statute and Defendant's obligations to provide the Tax Abatement related to the Project.

69.     The Plaintiff seeks a declaration and order that Plaintiff's Final Application was timely under the IPAC statute and Plaintiff is therefore entitled to the Tax Abatement, which is property of the Plaintiff's bankruptcy estate pursuant to Bankruptcy Code § 541.

## Second Cause of Action

## (Turnover of Estate Property pursuant to Bankruptcy Code § 542)

70.     The Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 69 above as if fully set forth herein.

71.     The Tax Abatement due Plaintiff under the ICAP statute and improperly withheld by Defendant constitutes property of the Debtor's bankruptcy estate pursuant to Bankruptcy Code § 541.

72.     Defendant is obligated to turn over the funds improperly held to the Debtor pursuant to Bankruptcy Code § 542 in the amount of not less than $6,526,215.76, plus other presently unknown amounts in respect of the Tax Abatement along with interest from the Petition Date and attorneys' fees and costs.

## Third Cause of Action

## (Unjust Enrichment)

73.     The Defendant was unjustly enriched by improperly withholding and retaining the Tax Abatement due Plaintiff under the ICAP.

74.     The enrichment of the Defendant was at the expense of the Plaintiff and all of its creditors and equity holders and it is against equity and good conscience to permit Defendant to retain such funds at the expense of these parties.

75.     By reason of the foregoing, in accordance with New York common law, the Plaintiff is entitled to entry of an order and judgment against Defendant, for the benefit of the Debtor's estate, in the amount of not less than $6,526,215.76, plus other presently unknown amounts in respect of the Tax Abatement along with interest from the Petition Date and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests the Court to grant the following relief:

(1)     On the first cause of action, declare that the Plaintiff properly applied for, and is entitled to, the Tax Abatement provided for under the ICAP, which is property of the estate;

(2)     On the second cause of action, order the Defendant to turnover to the Plaintiff and its estate any and all funds due as tax abatements under the ICAP during the relevant benefit period, in an amount believed to be no less than $6,526,215.76, plus other presently unknown amounts in respect of the Tax Abatement along with interest from the Petition Date and attorneys' fees and costs, or such other amount as may be determined by the Court;

(3)     On the third cause of action, order that the Defendant is unjustly enriched as result of its improper denial of Plaintiff's application and withholding of benefits due Plaintiff under the ICAP, in an amount believed to be no less than $6,526,215.76, plus other presently unknown amounts in respect of the Tax Abatement along with interest from the Petition Date and attorneys' fees and costs, or such other amount as may be determined by the Court; and

(4)     such other, further and different relief as this Court deems just and proper.

Dated:  April 18, 2022
      New York, New York

Respectfully submitted,

By: */s/ Douglas E. Spelfogel*

Douglas Spelfogel
Leah Eisenberg
Dabin Chung
**MAYER BROWN LLP**
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 506-2500
Facsimile:  (212) 262-1910
Email: dspelfogel@mayerbrown.com
      leisenberg@mayerbrown.com
      dchung@mayerbrown.com

*-and-*

Mark Frankel
**BACKENROTH FRANKEL &
KRINSKY, LLP**
800 Third Avenue
New York, New York  10022
Telephone: (212) 593-1100
Facsimile: (212) 644-0544
Email: mfrankel@bfklaw.com

*Co-Counsel to the Plaintiff*

## **EXHIBIT 1**

**Notice of Intent to Revoke**



**Buildings**

| | |
|---|---|
| Thomas Fariello, R.A.<br>Acting Commissioner | February 06, 2014 |
| John Gallagher, R.A.<br>Deputy Borough<br>Commissioner | David Salamon- Salamon Engineering PLL     (Applicant)<br>55 West 39th Street<br>New York, NY 10018 |
| 210 Joralemon Street<br>Brooklyn, NY 11201 | Weiss Zelig                                          (Owner)<br>209 Rutledge Street<br>Brooklyn, NY 11211 |
| +1 718 802 3576  tel<br>+1 718 802 4098  fax | **RE:  INTENT TO REVOKE APPROVAL(S) AND PERMIT(S),<br>ORDER(S) TO STOP WORK IMMEDIATELY**<br>96 WYTHE AVE<br>Block: 02295   Lot:  00021        Application #: 320376972 |

Dear Sir or Madam:

The Department of Buildings (the "Department") intends to revoke the approval and permit
issued in connection with the application referenced above, pursuant to Sections 28-
104.2.10 and 28-105.10.1 of the Administrative Code of the City of New York ("AC"), within
fifteen calendar days of the posting of this letter by mail unless sufficient information is
presented to the Department to demonstrate that the approval and permit should not be

Pursuant to AC §§ 28-104.2.10 and 28-105.10.1, the Department may revoke approval of
construction documents for failure to comply with the provisions of the AC, other applicable
laws or rules, or whenever a false statement or misrepresentation of material fact in the
submittal documents upon the basis of which the approval was issued, or whenever any
approval or permit has been issued in error.

The Department intends to revoke the approval and permit for the reasons set forth on the
attached Objection Sheet, dated January 30, 2014.

In addition, the conditions described in the attached Objection Sheet present an imminent
peril to life or property at the premises. Therefore, you are hereby ordered **STOP ALL WORK
IMMEDIATELY AND MAKE THE SITE SAFE** pursuant to AC § 28-105.10.2.

In order to prevent revocation of the approval and permit upon the expiration of the fifteen
day notice period, your appointment with NEIL ADLER, PE., LEED AP is scheduled for
February 21, 2014 @ 12:00 PM in 210 Joralemon St., 8th Fl., Brooklyn, NY 11201 to present
information to the Department demonstrating that the permit should not be revoked. Your
response may be deemed unresponsive if the architect or engineer of record fails to attend
the appointment.

Sincerely,

John Gallagher, R.A.
Deputy Borough Commissioner

JG/VRE
Cc:  Ira Gluckman, Borough Commissioner          Michael Maffei, Chief Construction Inspector
         Revocation File                                              Application Folder
         Premises file

**EXHIBIT 2**

**DOF Denial**



**Finance**

Exemptions & Abatements
59 Maiden Lane, 22nd Floor.
New York, New York 10038

August 25, 2014

Jay G. Seiden
Seiden & Schein, P.C.
570 Lexington Avenue, 14th Floor.
New York, NY 10022

Re: Application No. 18321
    Borough-Block- Lot: 3-2295-21

Dear Owner,

The Department of Finance has determined that the Borough-Block-Lots(s) noted above are ineligible for Industrial and Commercial Abatement Program (ICAP) benefits pursuant to Article 4 Title 2-F of the New York Real Property Tax Law.  A review of the application submitted for a Certificate of Eligibility indicates:

___**X**___    Failure to comply with the requirements pursuant to the above-referenced statute:

        _____    Preliminary Application was filed after the issuance of the initial building permit.

        __**X**__    Final Application was filed more than one year after the issuance of the initial building permit.

        _____    Completion of construction within four years from the date of issuance of the first building permit, or if no permit was required, the commencement of construction.

_____    Existing ICIP exemption on same portion of the building or structure for which ICAP benefits for which you are applying.

_____    Proposed ICAP project is in the same portion of the building as the ICAP project for which you are currently receiving benefits.  The statute requires a 4-year waiting period for filing a preliminary application for ICAP benefits for a project in the same portion of the building.

_____    No benefits shall be granted for tax lots where twenty percent or more of the total rentable square footage is or will be dedicated to residential purposes.

If you believe any of the above information is incorrect, contact us at Exemptionspolicy@finance.nyc.gov for questions about your filing(s).

Sincerely,

Theodore Oberman
Director of Commercial Exemptions/Abatements
Tax & Parking Program Operations